UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| Keith Smith and Dawn Smith, ) | Case No. 07 B 6631 |
| ) | Chapter 13 |
| Debtors ) | Judge Bruce W. Black |
| ) | |
| Keith Smith and Dawn Smith ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | Adv. Case: 07 A 00239 |
| ) | |
| SIPI, LLC and Midwest Capital ) | |
| Investments, LLC ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This adversary proceeding is before the court for ruling after trial on a fraudulent transfer action pursuant to 11 U.S.C. §548. Plaintiffs Keith and Dawn Smith, the Debtors in the underlying chapter 13 bankruptcy case, filed this adversary action against the Defendants, SIPI, LLC ("SIPI") and Midwest Capital Investments, LLC ("Midwest"), seeking to avoid the transfer of their former residence as a fraudulent transfer. For the following reasons, the Debtors may avoid the transfer of the property as a fraudulent transfer under section 548(a)(1)(B) and are entitled to recover the amount of their homestead exemption, $15,000.

### BACKGROUND

Most of the facts are not disputed. The Debtors resided at 720 Fox Street, Joliet, Illinois, ("property"), the subject property of this adversary proceeding, from about 1998 to May 31, 2009. On March 25, 2004, Dawn Smith became the holder of record title when she inherited the

1

property from her great-grandfather. At the time that Dawn inherited the property, it was encumbered by a tax lien for the non-payment of real estate taxes for the year 2000. On November 2, 2001, SIPI purchased the delinquent taxes for $4,046.26 and was issued a certificate pursuant to Illinois statutory law[1]. SIPI paid a total of $5,090.12 for the Fox Street property, including costs. The Debtors failed to redeem the delinquent taxes or pay the subsequent real estate taxes owing on the property. As a result, SIPI applied for and obtained a tax deed on April 15, 2005, which was recorded with the Will County Recorder of Deeds on May 19, 2005. SIPI subsequently sold the property to Midwest for $50,000 on August 10, 2005. SIPI executed a warranty deed in favor of Midwest, which was recorded on August 17, 2005. Midwest is the current holder of record title to the property.

On April 13, 2007, the Debtors filed a voluntary petition under chapter 13 of the Bankruptcy Code[2] and simultaneously filed an adversary action against SIPI and Midwest to avoid the tax sale of the property as a fraudulent transfer pursuant to 11 U.S.C. §548.[3] In Schedule A, the Debtors listed the property with a value of $90,000 at the time of the bankruptcy filing and listed a homestead exemption in the amount of $15,000.

The District Court affirmed this court's order granting dismissal for failure to state a claim, finding that the complained of transfer was perfected upon the expiration of the redemption period on November 1, 2004, and not the issuance and recording of the tax deed on April 15, 2005. The Debtors then appealed to the Seventh Circuit Court of Appeals which

---

[1] *See* 35 ILCS 200/21-205 – 35 ILCS 200/21-250.
[2] 11 U.S.C. § 101 *ff.* Any reference to "section" or "the Code" is a reference to the Bankruptcy Code unless another reference is stated.
[3] SIPI and Midwest have contested the standing of both Debtors to this proceeding, alleging that at least one Debtor does not have an interest in the property. Dawn Smith inherited the property and became the sole holder of record title in 2004. Keith Smith was dismissed from this proceeding for lack of standing on April 5, 2012, but was added as a party before trial due to the fact that a Judgment for Dissolution of Marriage entered by default granted Keith exclusive rights to the property. The Debtors have agreed to determine entitlement to any recovery in state court. As such, this court will not make any determination on the split of the recovery.

reversed and remanded to this court for further proceedings. The appellate court found that the transfer was made when it was perfected under section 548(d)(1) upon the issuance of the tax deed on April 15, 2005, thus falling within the two-year "look back" period of §548.

## JURISDICTION

The court has jurisdiction over this matter pursuant to section 1334 of Title 28 of the United States Code, and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under section 157(b)(2)(H) of Title 28.

## DISCUSSION

The following constitutes the court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

**A. Fraudulent Conveyance – Section 548(a)(1)(B)**

Under section 548(a)(1)(B) of the Bankruptcy Code, a trustee may avoid a transfer of an interest of the debtor in property within two years before the petition date if the debtor received less than a reasonably equivalent value in exchange for such transfer and was insolvent on the date that such transfer was made, or became insolvent as a result of such transfer. 11 U.S.C. § 548(a)(1).

While the parties dispute whether the Debtors were insolvent at the time of the transfer, this issue can be disposed of with ease. Under the Code, if the debtor's debts outweigh the debtor's assets when fairly valued, the debtor is considered insolvent. 11 U.S.C. § 101(32). The court is persuaded by Mr. Smith's uncontroverted testimony at trial as to the nature of the Smiths' indebtedness, as well as the bankruptcy schedules reflecting such indebtedness. While the Debtors' bankruptcy schedules provide a clear picture of their financial condition on the date

of the filing of their bankruptcy petition, the court does not have a similar financial snapshot of their financial condition at the time of the transfer in 2005. In this regard, however, the deposition testimony of Ms. Smith[4] with respect to the Debtors' assets and liabilities establishes that if the Debtors were not insolvent at the time of the transfer, at the very least, they were rendered insolvent by the transfer. Ms. Smith testified that the Debtors never had money to pay the full amount of various large bills – including electric and gas – and paid whatever they needed to in order to have electricity and gas service in their home. The Debtors also did not have money to pay any real estate taxes on their home from 2002 through 2009. Of the various debts listed on Schedule F, Ms. Smith testified that "probably most" of those debts existed in 2005. (Smith Deposition, Defendant's Exhibit 16, pg. 53, lines 2-5). The home was the Debtors' only asset worth any significant value, as the other assets owned by the Debtors were of minimal value. Ms. Smith's deposition testimony is credible and uncontradicted. Thus, the court finds that at the Debtors were rendered insolvent by the transfer.

The critical issue in dispute is whether the Debtors received less than reasonably equivalent value for transfer of their home. The Defendants rely on the Supreme Court decision, *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S. Ct. 1757, 128 L. Ed. 2d 556 (1994), in support of their position that reasonably equivalent value was received for the transfer as a matter of law because SIPI complied with the Illinois law in obtaining a tax deed to the property. In *BFP*, the Supreme Court addressed the question of reasonably equivalent value under section 548 of the Code in the context of a mortgage foreclosure. The Supreme Court rejected fair market value as the benchmark for measuring reasonably equivalent under section 548 because "market value, as it is commonly understood, has no applicability in the forced-sale context...." *Id.* at 537, 114 S. Ct. 1757. The Court concluded that "a fair and proper price, or a 'reasonably

---

[4] Admitted into evidence without objection.

4

equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." *Id.* at 545., 114 S. Ct. 1747. The *BFP* Court explicitly emphasized, however, that its opinion only covered mortgage foreclosures of real estate and stated that "[t]he considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different." *Id.* at 537 n.3, 114 S. Ct. 1757.

The Defendants contend that *BFP*'s holding extends to transfers of title as a result of tax sale proceedings because, like mortgage foreclosure sales, tax sales are "forced sales" to which market value is not applicable. The court disagrees.

Courts have generally held that *BFP* does not apply in the tax forfeiture context, particularly where competitive bidding is not a component of a tax sale statute. *See Williams v. City of Milwaukee (In re Williams)*, 473 B.R. 307, 320 (Bankr. E.D. Wis. 2012), *aff'd in part, City of Milwaukee v. Gillespie*, 487 B.R. 916 (E.D. Wis. 2013); *Berley Associates, Ltd. v. Eckert (In re Berley Associates, Ltd.)*, Bk. No. 1-32032, No. 12-02208, 2013 WL 2099816, at *6 (Bankr. D.N.J. 2013); *Balaber-Strauss v. Town of Harrison (In re Murphy)*, 331 B.R. 107, 118 (Bankr. S.D.N.Y. 2005) (citing cases).

This court concurs with the approach taken in a recent decision by a district court in this Circuit, *City of Milwaukee v. Gillespie,* in which the court held that "a judgment of foreclosure, based solely upon delinquent taxes in a non-sale foreclosure proceeding, does not necessarily provide a property owner 'reasonably equivalent value' for real estate without a public sale offering." 487 B.R. at 920. The *Gillespie* court explained that "if property is seized without a sale or competitive bidding, it cannot be presumed as a matter of law that 'reasonably equivalent value' was received by a debtor transferor because market forces were completely absent." *Id.*

5

Thus, "reasonably equivalent value" cannot be deemed to be received as a matter of law simply because the party that obtains a deed to real property through a state's tax sale procedure complies with state law. *Id.*

The Defendants' reliance on *BFP* is further hampered by the fact that the Illinois real estate tax sale process is not analogous to the Illinois mortgage foreclosure sale process. Unlike at a mortgage foreclosure sale, a debtor's interest in the property is not sold at a tax sale; rather, only the delinquent taxes are purchased by the winning bidder, not the title to the property. The court in *McKeever v. McClandon (In re McKeever)*, described the Illinois tax sale process as follows:

> "[T]he only purpose of a tax sale is for the taxing authority to obtain payment of its delinquent taxes at the lowest cost of redemption. There is *no correlation between the sale price and the value of the property*. Therefore, it will be a rare case where the taxes paid at a tax sale will approximate the actual value of the property."
> 166 B.R. 648, 650-51 (Bankr. N.D. Ill. 1994) (emphasis added).

As a result of the Illinois tax sale statute, competitive bidding was not present at the time of the transfer to ensure that market forces were acting efficiently to create a fair value for the property transferred. This court views the absence of competitive bidding and other procedures that ensure that a fair value is received for the transferred property as a significant bar to adjudicating "reasonably equivalent value" in a tax sale context. In light of the foregoing, the court finds that *BFP* does not bar recovery by the Debtors under section 548(a)(1)(B) of the Code because the price received at the tax sale does not necessarily reflect a reasonably equivalent value for the underlying property. *See City of Milwaukee v. Gillespie*, 487 B.R. at 920.

While Illinois law permits purchasers at tax sales to receive large profits – and sometimes exorbitant profits – under bankruptcy law such transactions are subject to attack under section

6

528(a)(1)(B). Having concluded that a tax sale procedure which does not include some competitive sale process is not sufficient by itself, as a matter of law, to establish "reasonably equivalent value" for purposes of section 548(a)(1)(B), the court next examines whether the Debtors have in fact received reasonably equivalent value in exchange for the transfer of their interest in their home.

At the trial, the Debtors called an appraiser who was the only expert testifying on the issue of the market value of the home at the time of the transfer to SIPI. The Debtors' appraiser testified that the fair market value of the property was around $110,000 at the time of the transfer to SIPI. The appraiser's testimony was credible and uncontradicted. However, as discussed below, the court need not determine the reasonable market value of the property as long as it is over the value of the Debtors' exemption amount. Midwest paid $50,000 to SIPI for the property. The court can determine that the value of the property is somewhere between the $50,000 that Midwest paid to SIPI and the $110,000 value as assessed by the appraiser. Therefore, it is clear that the value of the property was over the Debtors' exemption amount of $15,000.

In this case, at the time of the transfer, there was much more value in the Debtors' home than the tax liability satisfied by SIPI. The Debtors lost the equity in their home in exchange for the release of their obligation to pay delinquent taxes in the amount of only $4,046.26. The Debtors' equity value may be calculated by subtracting existing liens from the fair market value. The only liens on their home were $4,046.26 for the delinquent taxes. The court has determined that the value was between $50,000 and $110,000. Therefore, the Debtors gave up their equity of between $45,953.76 and $105,953.74 in exchange for the release of an obligation of $4,046.26. The value of what they received is from 3.8% to 8.8% of what they lost. They

7

clearly received less than reasonably equivalent value, and the transfer, to the extent of their exemption, may be avoided.

This holding in no way invalidates the Illinois tax sale law. The court is not persuaded by the Defendants' argument that avoidance of the transfer will impede the sale of tax certificates by clouding title to acquired properties. Other courts have been faced with similar arguments from tax deed purchasers but did not find them persuasive. In *In re Murphy*, for example, the court observed that "[a]lthough the result here impinges on a state regulatory scheme, it does so only to the extent that the scheme conflicts with the clear dictates of the Bankruptcy Code. The state's interest in enforcing its unpaid tax obligations is recognized by the Bankruptcy Code and, in fact, given higher priority than other creditors' interests." *In re Murphy*, 331 B.R. at 122. Moreover, depending on the amount the property owner owes in unpaid real estate taxes and the value of the property, some transfers that result from tax lien sales may be for "reasonably equivalent value." *See City of Milwaukee v. Gillespie*, 487 B.R. at 921. The Defendants ascribe far too much weight to the impact of this decision on the vitality of the tax sale certificate industry in Illinois. The court is skeptical that investors such as SIPI will forego the opportunity to obtain a substantial return on their investment merely because of a remote possibility that the property transfer would later be avoided in the debtor's bankruptcy case. *See Berley Associates, Ltd. v. Eckert (In re Berley Associates, Ltd)*, 2013 WL 2099816, at *9 (Bankr.D.N.J. May 16, 2013).

## B. Recovery of Fraudulent Transfer

Section 550 of the Code governs the liability of a transferee of an avoided transfer. Under section 550(a)(1), a fraudulent transfer can be recovered from the "initial transferee." 11 U.S.C. § 550(a)(1). Here, SIPI, as the tax purchaser and the party that first obtained a deed to the

8

Case 07-00239    Doc 249    Filed 07/30/13    Entered 07/30/13 13:52:03    Desc Main
Document    Page 9 of 10

Debtor's home, is the initial transferee. *See Butler v. Lejcar (In re Butler)*, 171 B.R. 321, 327 (Bankr.N.D.Ill. 1994). The less straightforward issue is whether the Debtors can recover from Midwest as the "immediate or mediate" transferee of the initial transferee (SIPI) under section 550(a)(2).

Midwest admits that it was a subsequent transferee of SIPI but asserts section 550(b)(1) as a defense. Section 550(b)(1) shields from liability subsequent transferees who take a transfer for value, in good faith, and without knowledge of its voidability. 11 U.S.C. § 550(b)(1). Because section 550(b)(1) is an affirmative defense, the burden of proof is on Midwest. *In re Commercial Loan Corp.*, 04 B 18946, 2010 WL 1730860, at *7 (Bankr. N.D. Ill. Apr. 29, 2010).

The evidence at trial demonstrated that Midwest had no knowledge of the voidability of the tax deed transfer to SIPI and that Midwest took title for value and in good faith. The fact that Midwest was aware that SIPI obtained the property through a tax deed proceeding is insufficient grounds for a recovery from Midwest as a subsequent transferee.

The court concludes that the Debtors are entitled to a recovery from SIPI, but not from Midwest, as Midwest has successfully asserted a defense under section 550(b)(1).

**C. Debtors' Remedy**

Section 522(h) of the Code permits a debtor to seek avoidance of a transfer under section 548 if the trustee has not attempted to do so. 11 U.S.C. § 552(h). The parties have offered no evidence concerning any actions taken by the trustee to avoid the tax sale, and the court's docket does not disclose any such attempts. Because the Debtors have shown that a trustee could have set aside the transfer under section 548 of the Code, they are entitled under section 522(h) to avoid the transfer to the extent of their homestead exemption. The Debtors' claimed homestead exemption reflected on their schedules is $15,000 pursuant to 735 ILCS 5/12-901. Therefore,

under section 522(h), the Debtors are entitled to the value of their homestead exemption of $15,000. *See McKeever*, 166 B.R. at 656.

Limiting the Debtors' recovery to the homestead exemption amount comports with the language of section 522(h) and also makes practical sense. The rights of SIPI to preserve its windfall must be subordinate to the fundamental right of the Debtors to achieve a fresh start. *See Pruitt v. Gramatan Investors Corp (In re Pruitt)*, 72 B.R. 436, 446 (Bankr. E.D.N.Y. 1987).

Judgment in the amount of $15,000 will be entered against SIPI in favor of the Debtors. Section 550 allows the court to order the return of either the property itself or the value of the property to the extent that the transfer is avoided. Because Midwest is in possession of the property, which is valued in excess of the aggregate of the Debtors' exemptions, the court finds that the interests of the parties are best preserved by entering judgment in the amount of the exemptions rather than by conducting a judicial sale.

## CONCLUSION

Based on the foregoing, the Debtors may avoid the transfer of their former residence pursuant to a tax sale as a fraudulent transfer under section 548(a)(1)(B) to the extent of their homestead exemptions in the amount of $15,000. Judgment for costs is awarded to the Debtors under Rule 7054.

This Memorandum Opinion will serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. A separate judgment reflecting the decision herein will be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

Dated:   July 30, 2013

/s/ Bruce W. Black

Hon. Bruce W. Black
U.S. Bankruptcy Judge